## PATTESON *v* GRAHAM.

(*Common Pleas of New York City and County, General Term.* May 7, 1888.)

1. HUSBAND AND WIFE—LOAN TO WIFE FOR BENEFIT OF SEPARATE ESTATE—FINDINGS—SUFFICIENCY OF EVIDENCE TO SUPPORT.

In an action for money loaned to a married woman, it appeared that when the loan was made she had certain real estate covered by a mortgage; that the money loaned was paid to one of the mortgagees; that afterwards the mortgagees discharged the lien. *Held*, sufficient to support a finding by a referee that the loan was made for the benefit of her separate estate.

2. INTEREST—AGREEMENT TO PAY—WHAT IS.

Where a person, in a receipt for money, agrees to give a note therefor, bearing interest at 7 per cent., there is a contract to pay such rate of interest.

Appeal from judgment on report of referee.

James A. Patteson brought suit against Amelia M. Graham, formerly A. M. Whittock, to recover for money loaned. Trial before a referee, and judgment for plaintiff on his report, from which the defendant appealed.

Argued before LARREMORE, C. J., and ALLEN and BOOKSTAVER, JJ.

*Masten & Nichols*, for appellant. *Foster & Thompson*, for respondent.

ALLEN, J. This is an appeal from a judgment entered upon the report of a referee in favor of the plaintiff against the defendant for the sum of $5,321.09. The action was brought to recover the sum of $2,000, alleged to have been loaned and advanced by the plaintiff to the defendant, at her in-

stance and request, on or about the 24th day of February, 1863, and which it is alleged she undertook and promised to repay, with interest at 7 per cent. The defendant by her answer denied the loan, and pleaded as a separate defense that, at the time it was alleged to have been made, she was a married woman. Plaintiff claims to have delivered to one John McKesson his check for the sum of $2,000, which was paid in regular course, in accordance with the written request of the defendant contained in the following letter: "NEW YORK, 24th February, 1863. DEAR SIR: Please make the check for the $2,000, for which I herewith hand you receipt, to the order of John McKesson, Esq., and oblige yours, truly, A. M. WHITLOCK." This letter was accompanied by the following receipt, written upon the same sheet of paper: "NEW YORK, February 24, 1863. Received from James A. Patteson, Esq., the sum of $2,000 in check, to the order of John McKesson, Esq., and for which am't I am to give him my note bearing interest at seven per cent., payable————. A. M. WHITLOCK." The check of plaintiff for the sum of $2,000, payable to the order of John McKesson, dated the same day as the letter and receipt, was put in evidence. The signature of the plaintiff was proved, the indorsement of the check by McKesson was shown to be in the handwriting of John McKesson, and the indorsement, "For deposit in the Bank of New York, McKesson & Robbins," was proved to be in the handwriting of a member of that firm. The defendant testifies that she has no recollection of the letter and receipt, Exhibits 1 and 2. She admits that the signature looks like hers. She says she cannot say surely that it is, but that it looks like her handwriting, as she remembers it at that time. The witness Graham, her present husband, says that it is, in his opinion, her signature. From the evidence upon this branch of the case, the referee found that the defendant signed the letter and receipt above referred to, and that the sum of money therein mentioned was delivered by the plaintiff, in accordance with her direction, to John McKesson. This finding is supported by the evidence, and we cannot say the referee erred in making it. The referee has also found that, at the time of the making of the said loan, the defendant had a separate estate. The defendant has testified that, during the year 1863, she did not have any separate estate, and did not own any property in her own right. She is, however, directly contradicted by the documentary evidence in the case, which shows that at the time of contract she was the owner of certain property in the county of Westchester, which was conveyed to her by John J. Crane in the year 1861, and which remained her property until some time in the year 1864, when it was sold by her. As to this matter, the finding of the referee was clearly correct.

Prior to the passage of chapter 381 of the Laws of 1884, a married woman could not bind herself by contract unless the obligation was created by her in or about carrying on her trade or business, or the contract related to or was made for the benefit of her separate estate, or intention to charge the separate estate was expressed in the instrument or contract by which the liability was created. The referee has found as a fact that the defendant was not engaged in the carrying on of any trade or business at the time the loan was made to her. No intention to charge her separate estate is expressed in the letter and receipt put in evidence. The ground of defendant's liability, therefore, must be that the contract related to or was made for the benefit of her separate estate. The referee has found that the money paid by the plaintiff, at her request, to McKesson, was paid to a creditor who had a lien by mortgage on her separate estate, and was for its benefit. It appears by the evidence that the land above referred to as owned by the defendant was, with other property, subject to a mortgage made by her husband and herself, in 1861, to John McKesson and Edward Haight, to secure 100 notes for $1,000 each. This mortgage contained provisions for the release from the lien of it of the several pieces of property mortgaged, upon the production and deposit

with the mortgagees, paid or canceled, of a number of notes specified. Some time after the payment to McKesson by the plaintiff, in accordance with defendant's directions, McKesson and Haight, the mortgagees, executed and delivered to the defendant a release from the lien of the said mortgage of the land owned by the defendant, and she very soon thereafter sold the same free from the lien of the mortgage. The defendant has not attempted to furnish any reason for directing Mr. Patteson to pay the sum of $2,000 to John McKesson, and the facts proved, the circumstances of the case, and the probabilities, indicate that such payment was so directed for the purpose of having the money applied towards the extinguishment of the lien of the mortgage. It was competent for her to show, by herself or by Mr. McKesson, that she had other dealings with Mr. McKesson, and that she directed the money to be paid to him for a different purpose. She has not done so, and we are of opinion that the referee has not erred in his decision upon this branch of the case, that the money paid by her direction by the plaintiff to John McKesson was so paid to him for the benefit of her separate estate. The referee has committed no error in directing the payment of interest at the rate of 7 per cent. up to the date of his report. The contract between the parties provided for interest at a specified rate. That contract rate governs until payment, or until the contract is merged in judgment. O'Brien v. Young, 95 N. Y. 428. Where interest is allowed, not by virtue of any contract to pay it, but simply as damages, because of default in discharge of an obligation, the legal rate must govern. Here, however, there was a contract to pay interest at the rate of 7 per cent.

We do not think there are any other questions in this case which require discussion, and we can discover no just ground for reversing this judgment. The judgment must therefore be affirmed, with costs. .