Interstate Ice and Power Corporation, Respondent, *v.* United States Fire Insurance Company, Appellant.

Contract — writing constituting contract of conditional sale — insurance (fire) — action to recover on policy insuring vendor's interest in property sold under contract of conditional sale — retaking of property by vendor not a rescission of contract — reasonableness of delay in resale — delay insufficient to evidence election of vendor to keep property retaken — insurer not entitled to credit for salvage value of property — upon payment of money due on sale insurer may be subrogated to remedies against conditional vendee — interest of vendee in property not divested by contract for its sale which was abandoned after fire.

1. A writing stating that the price of machinery, payable in installments, was to be a certain sum with interest on the deferred payments and that " it is understood that we are to retain title to all of the above equipment until same has been fully paid for," is not a contract for a chattel mortgage but a contract of conditional sale.

2. In an action to recover upon a policy of insurance whereby defendant insured plaintiff's assignor against loss or damage by fire on their unpaid interest in such machinery, a contention that before the fire the unpaid debt was extinguished by a seizure of the chattels cannot be sustained.   A retaking of the property by a conditional vendor is not a rescission of the contract.   The vendor after retaking may resell and hold the vendee for any deficiency resulting (Pers.

Prop. Law, §§ 80-b, 80-d; Cons. Laws, ch. 41) and there is nothing in the record to justify a finding that the privilege of resale was abandoned or lost.

3. Nor can it be said as matter of law that there has been such unreasonable delay in exercising the privilege of resale as to evidence an election by the vendor to keep what it has retaken and thus relieve the vendee as to chattel mortgages. The amount unpaid exceeded fifty per centum of the purchase price of the machinery and under such circumstances resale is not a duty unless written notice demanding a resale has been given by the buyer. (Pers. Prop. Law, §§ 79, 80.) Furthermore the vendor. might not unreasonably await the outcome of the seizure proceeding, which had been accompanied by an undertaking whereby a duty was imposed to return what had been seized if return should be adjudged, and for all that appears such proceeding is still pending undetermined.

4. The machinery having been damaged by the fire that occurred two weeks after its seizure, the right to indemnity accrued at the expiration of the sixty days allowed for payment after service of proofs of loss, and the debt on the machinery not having at that time been extinguished, there can be no force in the contention that the form of the policy, insuring the unpaid interest and not in terms the property itself, exacts a credit for the salvage value of the machinery as measured by the appraisal. No one can be sure that such value will be realized when the time to resell arrives. The defendant should, consequently, pay to the plaintiff what is still due upon the sale. It will then succeed, by subrogation, to the remedies available against the conditional vendee.

5. An argument that by force of an agreement between the plaintiff and the conditional vendee, by the terms of which the vendee was to sell to the plaintiff certain real property and the machinery in suit which had been installed therein, the interest of the vendee in the machinery was divested and his obligation to pay for it released, cannot be sustained. The agreement read in its entirety looks wholly to the future, and the fire having occurred before the closing day and the contract thereupon abandoned, the title to land and machinery remained where it would have been if no such contract had been made.

*Interstate Ice & Power Corp.* v. *U. S. Fire Ins. Co.*, 215 App. Div. 768, affirmed.

(Argued May 14, 1926; decided June 1, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 23, 1925, unanimously

affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Joseph Thurlow Weed* for appellant. The plaintiff had no " unpaid interest " in the property at the time of the fire. (*Rivara* v. *Stewart & Co.*, 241 N. Y. 259; *Harrison* v. *Hall*, 235 N. Y. 51; *Kiser* v. *Blanton*, 123 N. C. 404; *Stuyvesant Ins. Co.* v. *Reid*, 171 N. C. 513; *Lancaster* v. *Southern Ins. Co.*, 153 N. C. 285; *Griswold* v. *American Cent. Ins. Co.*, 1 Mo. App. 97; *Almo Fire Ins. Co.* v. *Davis*, 60 S. W. Rep. 802; *People's St. Ry. Co.* v. *Spencer*, 156 Penn. St. 85; *Reynolds* v. *Lanc. Fire Ins. Co.*, 128 Cal. 16; *Smith* v. *Col. Ins. Co.*, 17 Penn. St. 253; *Jordan* v. *Ins. Co.*, 151 N. C. 343; *Warehouse Co.* v. *Warehouse Corp.*, 195 N. C. 578.) The failure of the plaintiff to sell the chattels which it had retaken and its election to retain' possession and procure a release of the debtor's rights, coupled with an agreement for the entry of a formal judgment of absolute ownership, did two things: It paid Brady's debt and canceled the plaintiff's " unpaid interest," and it deprived the defendant of its right to subrogation provided for in the policy of insurance. (*Phœnix Ins. Co.* v. *Parsons*, 129 N. Y. 86; *Left* v. *Guardian Fire Ins. Co.*, 125 N. Y. 83.)

*Woolsey A. Shepard* for respondent. At the time of the fire the indebtedness from Brady to the plaintiff was unpaid and the defendant was liable for the injury to the security for the debt up to the amount insured under its policy. (*Kaiser* v. *Blanton*, 123 N. C. 404; *Duden* v. *Waitzfelder*, 16 Hun, 337; *Excelsior Fire Ins. Co.* v *Royal Ins. Co.*, 55 N. Y. 343; *Smith* v. *Col. Insurance Company*, 17 Penn. St. 253.) The contract made with Brady, after default on his notes, was executory, and never having been completed, Brady was never discharged from his debt. (*Clinton* v. *Home Insurance Company*, 45 N. Y. 454; *Browning* v. *Home Ins. Co.*, 71 N. Y. 508.)

7

CARDOZO, J.   The action is brought upon a policy of insurance whereby the defendant insured Machinery Utilities Company, Inc., plaintiff's assignor, against loss or damage by fire in the sum of $13,000 " on their unpaid interest in the complete machinery installed in ice-making plant of C. S. Brady " at Rocky Mount, North Carolina.

The machinery covered by the policy was sold to Brady by Machinery Utilities Company, Inc., in 1923, under a contract of conditional sale. The price, payable in installments, was to be $15,560, with interest on the deferred payments. " It is understood that we are to retain title to all of the above equipment until same has been fully paid for." This is not a contract for a chattel mortgage as the defendant would have us say. Its provisions stamp it unmistakably as a contract of conditional sale.

There was default by the vendee in the payment of installments of the price. Thereupon, in September, 1923, plaintiff, which had succeeded to the rights of the conditional vendor, began a proceeding known as a claim and delivery proceeding in the courts of North Carolina. Upon process issued in that proceeding, the sheriff made return that he had seized the machinery therein described and delivered it to the plaintiff. The affidavit upon which he acted was to the effect that plaintiff was entitled to the possession by virtue of " a certain chattel mortgage or instrument retaining title."

The seizure of the property was followed by an agreement between plaintiff and Brady for the settlement of their differences. By this agreement, made in October, 1923, plaintiff was to buy and Brady to sell the real property at Rocky Mount and all its machinery and appurtenances, the conveyance to be delivered December 1, 1923. Upon the closing of title, plaintiff was to surrender the notes received from Brady under the contract of conditional sale, and Brady released the plaintiff from any and all claims, and consented that judgment be

entered in its favor in the proceeding then pending. Before this agreement could be carried out, a fire destroyed the building and damaged the machinery which, despite the levy by the sheriff, had been left in its old location. By agreement, there was an appraisal of the loss under the policy in suit.   The sound value of the property was fixed at $20,517, and the damage at $12,165, with the result that the salvage value was $8,352.   At the time of the fire, the balance due upon the contract of conditional sale was $11,987.   The trial court gave judgment for that amount, and the Appellate Division unanimously affirmed.   The defendant insists that credit should have been given for the full value of the property retaken, which would wipe out the loss altogether, or in any event for the salvage value, $8,352, which would reduce the loss to $3,635.

We find no error in the judgment.   The point is made that before the fire the unpaid debt was extinguished by the seizure of the chattels.   We think the debt was still alive.   A retaking of property by a conditional vendor is not a rescission of the contract.   If this may once have been doubtful (Bogert, Commentaries on Conditional Sales, pp. 166, 169, 170, 171, collating the decisions), the doubt has been dispelled by the Uniform Conditional Sales Act, which became part of the law of New York in 1922.   The vendor after retaking may resell, and hold the vendee for any deficiency resulting (Pers. Prop. Law [Cons. Laws, ch. 41], §§ 80-b, 80-d; L. 1922, ch. 642). Nothing in this record justifies a finding that the privilege of resale was abandoned or lost.   We may assume, without deciding, that unreasonable delay in exercising the privilege of resale is evidence of an election by the vendor to keep what it has retaken, and thus release the vendee (Pers. Prop. Law, § 80-c; cf. as to chattel mortgages *Harrison* v. *Hall*, 239 N. Y. 51).   Delay, unless forbidden by statute, may not be found to be unreasonable without reference to the circumstances.   Here, the seizure under

provisional process was accompanied by an undertaking whereby a duty was imposed to return what had been seized if return should be adjudged. Not unreasonably the vendor before reselling would await the outcome of the suit. Within a fortnight following the seizure, a fire had occurred. What was left was not the completed machinery, but only dismembered parts. Proof of loss was served November 27, 1923, and the sixty days allowed for payment expired January 26, 1924. Then, if not before, the right to indemnity accrued. The defendant refers to section 65 of the statute governing conditional sales as exacting resale within a period of thirty days. The fact seems to be overlooked that section 65 as it once stood (L. 1909, ch. 45) has been superseded by sections 79 and 80 (L. 1922, ch. 642). Under the present act, which was in force in 1923, resale is not a duty if at the time of the retaking less than fifty per centum of the purchase price has been paid under the contract unless written notice demanding a resale has been given by the buyer (§ 80). The purchase price of this machinery was $15,560, and the amount unpaid $11,987.53. In such circumstances resale was not required within any determinate time in order to relieve the vendor from the inference of an election (under § 80-c) to keep the chattels as its own. At most, such an inference would arise when delay became unreasonable. We cannot say as matter of law that this limit has been exceeded. For all that appears the claim and delivery proceeding is still pending and undetermined. Still less can we say that the limit had been exceeded when the right of action for indemnity matured under the policy. (*Insurance Co.* v. *Stinson*, 103 U. S. 25, 27, 28).

If the debt had not been extinguished when indemnity was due, there can be no force in the contention that the form of the policy, insuring the unpaid interest, and not in terms the property itself, exacts a credit for the salvage value of the machinery as measured by the appraisal.

No one can be sure that such value will be realized when the time to resell arrives. Before the fire, the vendor's unpaid interest was secured by complete machinery appraised at $20,000 and more. As a consequence of the fire, there remains the precarious security of separate or dismembered parts. The case in this aspect is ruled by *Excelsior Fire Ins. Co.* v. *Royal Ins. Co.* (55 N. Y. 343, 353, 359). " When an appreciable loss has occurred to the property from fire, its capacity to pay the mortgaged debt has been affected; it is not so well able to pay the debt which is upon it " (55 N. Y. at p. 359). Here the capacity has been impaired to the extent of $12,165, if not more. The defendant is amply protected by the right of subrogation. Let it pay to the vendor what is still due upon the sale. It will then succeed by subrogation to the remedies available against the conditional vendee.

There remains a final point which deserves a word of notice. The defendant argues that by force of the agreement of October, 1923, the interest of the conditional vendee in the machinery conditionally sold was presently divested, and the obligation to pay for it released. The October agreement, read in its entirety, looks wholly to the future. The machinery is to go back to the vendor and the notes are to be surrendered, upon the conveyance and not before. When the closing day arrived, the fire had occurred, and the buyer, rightly or wrongly, refused to accept the title. The seller did not elect to sue for specific performance. He treated the contract as abandoned, sued at law for damages, and thereafter recovered judgment. The title to land and machinery remained where it would have been if no such contract had been made.

The judgment should be affirmed with costs.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE and LEHMAN, JJ., concur; ANDREWS, J., absent.

Judgment affirmed.